## Gulden v. Borough of Carlisle

*Frank P. Lawley, Jr.,* for plaintiffs.
*Martson & Snelbaker,* for defendants.

WEIDNER, J., July 16, 1974.—

## STATEMENT OF PLEADINGS

In this action to enjoin enforcement of ordinance 1028, the defendant Borough of Carlisle's Housing Code, plaintiffs, Elsie M. and F. Byron Gulden, contend that the borough is without power under the Borough Code, Act of February 1, 1966, P. L. (1965) 1656 (No. 581), sec. 1202, as amended, 53 PS §46202(24), to authorize inspections of the maintenance of housing, or to authorize judicial officers to issue search warrants to implement such inspections. Plaintiffs further contend that various provisions of ordinance 1028 are vague, discriminatory and unreasonable, such that ordinance 1028 constitutes an improper delegation of legislative duty to the defendant, Housing Board of the Borough of Carlisle, and to defendant, Clyde L. Adams, Housing Official.

Defendants respond that plaintiffs have failed to aver a dispute which is ripe for adjudication. In the alternative, defendants argue that plaintiffs are without standing to challenge ordinance 1028's alleged vagueness, discriminatory impact or unreasonableness. Finally, defendants submit that ordinance 1028 is without defect in any disputed respect.

## STATEMENT OF ISSUES RAISED

1. Does defendant Adams' threatened enforcement of those provisions of ordinance 1028 relating to inspections of the maintenance of housing supply standing to plaintiffs to challenge, on constitutional grounds, the ordinance's standards for heating, lighting, electricity, ventilation and floor space?

2. In the absence of express statutory authority, does a borough have the power to authorize its housing official to inspect the maintenance of housing, and to procure a search warrant where necessary to implement such inspection?

## FINDINGS OF FACT

1. Elsie M. Gulden is the owner, in fee simple, of property located at 30 West South Street, Carlisle, Pa.

2. F. Byron Gulden resides with his mother, Elsie M. Gulden.

3. Pursuant to powers conferred by the Borough Code, Act of February 1, 1966, P. L. (1965) 1656 (No. 581), as amended, 53 PS §45101 et seq., the Borough of Carlisle enacted on December 14, 1967, an ordinance known as the housing Code, Ordinance 1028.

4. The Borough Code, supra, section 1202, 53 PS §46202(24), does not confer express authority upon boroughs to provide for the inspection of maintenance of housing, although the power to enforce housing codes is expressly granted.

5. Section 201 of ordinance 1028 provides that the administration and enforcement of the ordinance shall be carried out by a housing board and a housing official, who ". . . shall make regularly scheduled, periodic inspections . . ."

6. Section 202 of ordinance 1028 provides, in pertinent part:

"(a) The Housing Official . . . shall request permission for free access for the purpose of an inspection

from the owner, occupant, or operator of any dwelling or dwelling unit to be inspected. Said owner, occupant, or operator shall have the privilege of designating the time of said inspection which shall be made within 48 hours from the time of the request and between the hours of 8:00 o'clock A. M., and 8:00 o'clock P. M., Monday through Friday . . .

"(b) If voluntary permission to inspect said premises is refused to the Housing Official, he shall procure a search warrant in the manner provided by law, unless he has received a written citizen complaint or other satisfactory reason for securing immediate entry, in which event he shall attempt peacble (sic) entry without a search warrant."

7. On November 22, 1968, Clyde L. Adams, Housing Official of the Borough of Carlisle, was refused permission to inspect the Guldens' residence.

8. Thereafter, on December 10, 1968, Clyde L. Adams wrote to Mr. Gulden, asking that a time for inspection be designated, and adding, ". . . otherwise I will be forced to obtain a search warrant. . ."

9. Permission to inspect was again refused.

## DISCUSSION

Plaintiffs, Elsie M. and F. Byron Gulden, have here undertaken, on averments of improper enactment, vagueness, discriminatory impact and unreasonableness, a wide-ranging attack of ordinance 1028, defendant Borough of Carlisle's Housing Code. Given the public interest in the maintenance of adequate housing (Camara v. Municipal Court of the City and County of San Francisco, 387 U. S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)) and the heavy burden imposed upon one who challenges the constitutionality of an ordinance (Gerstley v. Cheltenham Township Commissioners, 7 Pa. Commonwealth Ct. 409 (1973)), the breadth of plaintiffs' attack, and its postulate of uncon-

stitutionality counsel judicial restraint. Additionally, plaintiffs' attack is burdened by that principle which restricts consideration of constitutional issues to those which are essential to a dispute's resolution: Hostetter v. Bureau of Traffic Safety, 10 Pa. Commonwealth Ct. 228 (1973).

The threshold question then is, which of the constitutional issues raised by plaintiffs is essential to disposition of this case. It is our view, upon reasons articulated within, that the scope of inquiry is properly limited to those provisions of ordinance 1028 relating to inspections of the maintenance of housing. It is our further opinion that the provisions of ordinance 1028 relating to inspections of the maintenance of housing were properly enacted and are constitutionally sound.

## I. *The Scope of Inquiry*

The origin of plaintiffs' complaint is the attempt of defendant Adams to inspect plaintiffs' home. It is solely on the basis of this attempt that plaintiffs claim standing to challenge ordinance 1028 on grounds of improper enactment, vagueness, discriminatory impact and unreasonableness.

Presumably, plaintiffs invoke the well-settled principle that standing to challenge an ordinance on constitutional or other grounds is contingent upon the ordinance's application to the complainant such that a genuine controversy arises: Bliss Excavating Co. v. Luzerne County, 418 Pa. 446 (1965); Commonwealth v. Bucks County, 8 Pa. Commonwealth Ct. 295 (1973). Notwithstanding plaintiffs' arguments to the contrary, this court remains unconvinced that an attempt to inspect constitutes an application of ordinance 1028 sufficient to supply standing to complain of anything more than the ordinance's provisions for inspection.

Although plaintiffs' position may be partially

founded upon the "overbreadth exception" to the above principle, i.e. that ordinance 1028's requirement that every dwelling be equipped with electricity exerts a "chilling effect" on the expressive conduct of those with religious beliefs opposed to such utilities, (see Levy v. Parker, 478 F. 2d 772 (3d Cir., 1973)), it must be found that the record, in this respect, does not disclose a dispute ripe for adjudication. Even though the "overbreadth exception" allows for consideration of an ordinance in hypothetical contexts, it does not sanction constitutional litigation of premature and academic significance. See United States v. Brewer, 363 F. Supp. 606, 609 (M. D. Pa., 1973).

II. *Ordinance 1028's Provisions for Inspections*

Defendant Adams' attempt to inspect plaintiffs' home was made pursuant to sections 201 and 202 of ordinance 1028, which authorize housing inspections made with an owner's, occupant's or operator's consent, or upon procurement of a search warrant "in the manner provided by law." Plaintiffs object that under the Borough Code, supra, the defendant Borough of Carlisle is without authority to provide for inspections of the maintenance of housing, or for the issuance of search warrants to implement such inspections, and, further, that the challenged sections are defectively vague in enumerating standards for determining probable cause to issue a search warrant.

The Borough Code, supra, does not, as plaintiffs contend, confer express authority upon boroughs of this Commonwealth to provide for inspections of the maintenance of housing. Nonetheless, because "the only effective way to seek universal compliance with the minimum standards required by municipal codes is through routine periodic inspections of all structures" (Camara v. Municipal Court of the City and County of San Francisco, 387 U. S. at 535, 87 S. Ct.

at 1734, 18 L. Ed. 2 at 939 (1967)), it must be held that the Borough Code, supra, by necessary implication (Gagliardi v. Ambridge Borough, 401 Pa. 141 (1960)), confers the authority here disputed. See also Secretary of Revenue v. John's Vending Corp., 453 Pa. 488 (1973).

By the same reasoning, it is clear that it is within the defendant Borough of Carlisle's authority under the Borough Code, supra, to empower its housing official to procure a search warrant. That is, because the fourth amendment protects the individual from unreasonable searches, and because, under Camara v. Municipal Court of the City and County of San Francisco, supra, a warrantless housing inspection over an occupant's protest is an unreasonable search, it follows that the power to inspect is, by necessary implication, inclusive of the power to procure a search warrant where necessary to implement the inspection.

Ordinance 1028's provisions for designation of the time for inspection by a dwelling's owner, occupant or operator, and for the housing official's procurement of a search warrant "in the manner provided by law," effectively balance the competing interests of the right to privacy under the fourth amendment, and the public need for adequate housing. The provisions also make explicit an individual's right to require that a neutral magistrate determine the housing official's authority to inspect, the necessity for inspection, and the limits of inspection.

Considered in the light of such reasoning, plaintiffs' objections to sections 201 and 202 of ordinance 1028 are demonstrably untenable. The sections do not confer authority upon judicial officers to issue search warrants. Plaintiffs' arguments, to the contrary, miscontrue both the purpose of the sections and the nature of the judicial function. A housing official's

authorization to procure a search warrant does not augment the authority of any judicial officer. Moreover, because the authority to issue search warrants is a common-law incident of the judicial function (Commonwealth v. Bernola, 31 Beaver 114 (1971)), even if the sections were construed to augment the authority of judicial officers, the very act of construction would be without effect.

Nor are sections 201 and 202 of ordinance 1028 defectively vague in failing to enumerate standards for determining probable cause to issue a search warrant. Because the sections do not purport to regulate the issuance of search warrants, the vagueness of which complaint is made is a consequence of plaintiffs' misinterpretation of the ordinance. The reference within section 202 to the right of an owner, occupant or operator to refuse access to a housing official does not prescribe a standard for determining probable cause to issue a search warrant, but imposes a duty upon the housing official to solicit permission to inspect. See Alford v. Bailey, 31 D. & C. 2d 755 (1961); affirmed, 202 Pa. Superior Ct. 324 (1963), where a similar provision regarding the inspection of livestock was upheld.

Because the necessity for inspection depends upon considerations which range from the passage of time to the condition of an entire area (Camara v. Municipal Court of the City and County of San Francisco, 387 U. S. at 538, 87 S. Ct. at 1736, 18 L. Ed. 2d at 941 (1967)), it would be unreasonable to insist that such considerations be enumerated within the ordinance. Plaintiffs' reliance upon the Act of October 26, 1972, P. L. 435 (No. 245), sec. 13, 35 PS §4013.1, providing for inspections of air pollution control systems, does not compel a different result. Within the statute cited by plaintiffs, the only standard for determining prob-

able cause to issue a search warrant is that "the inspection is necessary to properly enforce the provisions of this act": Id. Like section 202 of ordinance 1028, the statute leaves the determination of probable cause to the judgment of a neutral magistrate based upon facts presented to him by the official authorized to inspect.

In upholding sections 201 and 202 of ordinance 1028, this court honors the precedent of City of Pittsburgh v. Kronzek, 2 Pa. Commonwealth Ct. 660 (1971); Blight v. Luzerne Borough, 61 Luz. 191 (1971), and Mady v. Brennan, 63 Schuyl. 116 (1966), all of which sustain inspections of the type here considered as a necessary, proper and constitutionally valid procedure for implementing municipal housing codes. See also Hilltown Township v. Mager, 6 Pa. Commonwealth Ct. 90, 94 (1972), appeal dismissed, 411 U. S. 979 (1973). For the reasons advanced, we conclude that plaintiffs have failed to demonstrate that sections 201 and 202 of ordinance 1028 were improperly enacted, or are defective in any respect.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter of this dispute.

2. Questions of constitutional import will be resolved only where the litigants have demonstrated the existence of a genuine controversy which requires resolution.

3. Sections 201 and 202 of ordinance 1028 implement the inspection procedure found by necessary implication within the Borough Code, Act of February 1, 1966, P. L. (1965) 1656 (No. 581), sec. 1202, as amended, 53 PS §46202(24).

4. Housing inspections are a necessary, proper and constitutionally sound procedure for implementing housing codes.

## ORDER OF COURT

And now, July 16, 1974, for the reasons herein contained, it is ordered, adjudged and decreed that:

1. Plaintiffs' prayer for injunctive relief be, and is hereby, overruled and dismissed; and

2. Plaintiffs shall bear the costs of the proceeding.

The Prothonotary of Cumberland County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or their counsel of record as provided by the Pennsylvania Rules of Civil Procedure, and unless exceptions are filed to this decree nisi within 20 days after said notice, this decree shall be entered as a final decree by the prothonotary.