No. 37,653

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, *Appellant,* v. THE STATE COMMISSION OF REVENUE AND TAXATION, Fred Horn, Chairman and Commissioner, Dale A. Fisher and C. I. Moyer, Commissioners of the State Commission of Revenue and Taxation, and Bert E. Mitchener, Director of Revenue of the State Commission of Revenue and Taxation, and their successors in office, *Appellees.*

(212 P. 2d 363)

Opinion filed December 10, 1949.

*Arthur S. Brewster,* of Kansas City, Mo., argued the cause and *Lloyd S.*

*Miller* and *Kenneth L. Hodge* of Kansas City, Mo., and *James A. McClure, Robert L. Webb* and *Ralph W. Oman,* all of Topeka, were on the briefs for the appellant. *Earl H. Painter,* of St. Louis, Mo., of counsel.

*Mason Mahin,* of Smith Center, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for a declaratory judgment wherein the plaintiff asked for an interpretation of certain sections of G. S. 1947 Supp. 79-3701 to 79-3711, inclusive, commonly known as the "Kansas Compensating Tax," and certain related sections of G. S. 1947 Supp. 79-3601 to 79-3625 commonly known as the "Kansas Retailers' Sales Tax Act." The trial court interpreted the sections against the contentions of the plaintiff and it was appealed.

The petition, after the formal allegations as to the official positions of defendants and that plaintiff was engaged in the telephone business, stated that the service offered by plaintiff was subject to the Kansas retailers' sales tax act of two percent upon its gross receipts and that the plaintiff had been complying with the provisions of that statute. The petition then alleged that G. S. 1947 Supp. 79-3703 levied a tax of two percent for the privilege of "using, storing or consuming" within the state any articles of tangible personal property purchased subsequent to June 30, 1945, except such articles as were exempt, as provided in G. S. 1947 Supp. 79-3704; that the above section exempted the use, storage or consumption of tangible property brought into the state by public utility for consumption or movement in interstate commerce, tangible personal property purchased other than at retail, tangible personal property upon which a sales tax or use tax of two percent had already been paid and tangible personal property brought into Kansas, which, if purchased in Kansas, would not have been subject to tax under the provisions of G. S. 1947 Supp. 79-3601 to 79-3625, inclusive; that plaintiff's telephone system consisted of central office equipment, telephone instruments, booths, pole lines, wire, cable, conduit and private branch exchanges and other related equipment, all neccessary in furnishing intrastate communication service; that in addition plaintiff owned and maintained buildings and purchased stationery, office supplies, typewriters, janitor supplies, furniture and office equipment, vehicles, tools and other work equipment; that plaintiff had in the past and would in the future exercise the privilege of using, storing or consuming within the state all articles of personal property first spoken

of above, all of which articles were or would be purchased outside the state and brought into it for the purpose of incorporating them into the integrated telephone system by way of maintenance, construction, reconstruction, replacement or using it in the operation of its integrated telephone system; that defendants had notified plaintiff that it was liable for the compensating tax of two percent in respect to all such articles of personal property brought into Kansas subsequent to January 1, 1948; that the taxable service which plaintiff was furnishing was set out in its general exchange tariff, a copy of which was attached to the petition; that plaintiff was ready and willing to pay all lawful compensating taxes assessed against it, but contended it was not liable for it on all the articles of tangible personal property purchased by it outside the state and brought into the state and actually incorporated into its integrated telephone system and actually used by the telephone users in telephone communications over such integrated telephone system; that the articles, such as central office equipment, telephone instruments, booths, pole lines, wires, cables, conduits and private branch exchange switchboards, were exempt from taxation because they were articles of tangible personal property purchased by plaintiff, engaged in furnishing a taxable service, and were actually used in the production and entered into the processing of, and became an ingredient or component part of the taxable telephone service furnished by plaintiff consisting of the use of plaintiff's facilities for the purpose of communication. The petition then referred to and quoted from certain provisions of the sales tax act, which will not be set out here, but will be later in this opinion. The prayer was that the court take jurisdiction and determine that the articles of tangible personal property described brought into the state to be used in the manner set forth were not taxable under the Kansas compensating tax act, and defendants had no lawful right to collect a compensating tax from plaintiff by reason of the use, storage or consumption of such property within the state.

The defendants answered admitting the nature of the business of the telephone company; that plaintiff was subject to the retailers' sales tax act and admitting certain other allegations as to the statutes. The answer denied that the articles mentioned were exempt from the Kansas compensating tax act and alleged that all of such property was purchased outside the state of Kansas and brought into the state, where it was used, stored and consumed by

the plaintiff in such a manner as to subject it to the provisions of the Kansas compensating tax act, as set out in G. S. 1947, Supp. 79-3701 to 79-3711, inclusive. The answer denied that the articles in question were used by the telephone users, but alleged that the property was owned by plaintiff and used, stored or consumed by it for the purpose of carrying on a telephone business, and denied that such property entered into the processing of, or became an ingredient or component part of the intangible telephone service furnished by defendant. Defendants prayed that the court determine the articles referred to, brought into the state by plaintiff, were taxable under the Kansas compensating tax act.

The trial court heard considerable evidence as to the operation of a telephone system. With such details we are fairly familiar, that is, we all understand that when one makes a call by dialing his phone, it must go to the central switchboard and thereby be switched to the line of the person called and when that person hears his instrument ring he answers and the means of communication is complete. We understand that a great deal of property other than the telephone instruments in question must be used in making such communication possible.

The defendants demurred to the evidence of the plaintiff on the ground that it failed to prove a cause of action in favor of the plaintiff and against the defendants. This was overruled. Defendants introduced no evidence. The court found that an actual controversy existed and that the parties were entitled to an interpretation of the two statutes mentioned.

The final judgment was that the central office equipment, telephone instruments, booths, pole lines, wires, cables, conduits, private branch exchange switchboards, and related equipment purchased outside the state by plaintiff temporarily stored and later incorporated into its integrated telephone system were taxable under the compensating tax act and the assessment of such a tax by defendants constituted the legal exercise of the powers of the defendants.

The plaintiff filed a motion for a new trial on the grounds of erroneous rulings and that the decision was contrary to the evidence. This motion was overruled, hence this appeal.

The sales tax act was passed in 1937. It was chapter 374 of the Sessions Laws for that year. It is now with some amendments G. S. 1947 Supp. 79-3601 to 79-3625. It levied a tax of two percent upon the privilege of selling tangible personal property at retail in

this state or rendering or furnishing certain services therein. The act is framed and has been uniformly construed both by the tax commission and the courts so the transaction taxed is that by which a commodity moves to the ultimate consumer, whoever he may be.

With the enactment of the sales tax act another problem arose. Much property is bought outside the state and brought in for various purposes. Kansas could not tax the privilege of selling property where the sale took place beyond its borders. It could, however, tax the privilege of using property within this state. The result was the enactment of chapter 375 of the Session Laws for 1937, now with some amendments G. S. 1947 Supp. 79-3701 to 79-3711. It is denominated "compensating tax" in the Session Laws. It is sometimes referred to as the "use tax." These two acts are really complementary and supplemental to each other and are construed together generally. It would not do to make a taxpayer pay two percent tax when he bought property and also two percent tax when he used it. On that account the section following the section which imposed the tax provided certain transactions to which the tax should not apply. Among these is one in respect to the use of property, the sale of which had already been subject to a sales or use tax, in respect to the use of any property brought into or used within the state, if such property would not have been subject to tax under the provisions of the retailers' sales tax act of this state, if purchased within this state.

The plaintiff in its petition pleaded itself within at least two of the above exemptions. In its brief the plaintiff says "Appellant in this case does not contend that the purchase of the property outside the state has already been subject to a two percent gross receipts tax. Its contention is that the property here involved was purchased other than at retail as defined in the Kansas retailers' sales tax act and if purchased in the state of Kansas, the sale would not have been subject to the Kansas retailers' sales tax act."

This argument takes us to an examination of G. S. 1947 Supp. 79-3601 to 79-3625, inclusive, and more especially 79-3602. That is the section of the sales tax act that deals with definitions. As in so many cases where the legislature enters upon a new field, it was thought wise to provide in this act for the meaning of certain words used. So that for the purpose of the act we are not bound by the dictionary or common meaning to be given a word, but could look to the act itself also.

First, G. S. 1947 Supp. 79-3602 (e) defined "retail sale" as a sale

made within the state of tangible personal property for use or consumption and not for resale or furnishing electrical energy, gas, water, service or entertainment, except wholesale sales. At first glance it might appear that the above definition simply stated that a retail sale was any sale except a wholesale sale and we would appear to be in trouble for a definition of "wholesale sale."

We find that, however, in G. S. 1947 Supp. 79-3602 (k) that subsection described certain transactions which for the purposes of this act should be deemed wholesale sales. Upon this subsection plaintiff bases its argument. It argues that the transaction it pleaded and proved are such as this subsection provides shall be wholesale sales. The subsection is important and will be set out here, as follows:

"(k) Each sale of tangible personal property or service made to a person engaged in the business of producing, manufacturing or compounding for sale, any article, substance, service or commodity which is actually used in the production, and enters into the processing of, and becomes an ingredient or component part of the article, substance, service or commodity which he manufactures or compounds, produces or furnishes, including the container, label, or shipping case, which container, label, or shipping case is used in the distribution of ·said article, substance or commodity and is not to be returned to the producer, manufacturer or compounder for reuse, shall be deemed a wholesale sale and shall be exempt from taxation under this act; and for the purposes of this act, poultry, dairy and other livestock feed and the component parts thereof, and all seeds or seedlings, are deemed to become component parts of the eggs, milk, meat and other livestock products, plants and plant products, produced for resale; and each sale of such feed or seed shall be deemed a wholesale sale and shall be exempt from taxation under this act. Each purchase of service as defined in section 79-3603, paragraph (b) and (c) of the General Statutes Supplement of 1945, and any amendments thereto, by a person engaged in compounding and selling a service of a like kind, which is subject to tax under section 79-3603, paragraphs (b) and (c) of the General Statutes Supplement of 1945, or any amendments thereto, and actually used in compounding such taxable service shall be deemed a wholesale sale and shall be exempt from taxation under this act."

Stated succinctly, plaintiff argues that the property in question is used and enters into the processing of and becomes an ingredient of the service it furnishes. In other words, it argues that its instruments, poles, wire and other similar property bears the same relation to its telephone service that a carload of hides would to one engaged in the manufacture of shoes or a carload of flour does to a baker. Plaintiff argues that the words "ingredient" "component part" and "processing" should be given their ordinary or generally

accepted meaning and that when we do so we must conclude that the legislature knew the sort of service the telephone company was furnishing and in the process of furnishing this service the property in question became a constituent part of it. We find difficulty in following plaintiff in this argument. It is correct to say that we give words used in an act their ordinary and generally accepted meaning. There is an equally potent rule for statutory construction, however. It is that in construing an act we will examine the entire act with the purpose of ascertaining just what was the legislative intention. (See *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 183 P. 2d 234.) There we said:

"In *In re Estate of Butler,* 159 Kan. 144, 152 P. 2d 815, we said legislative intent is to be determined by construing language employed in the statute under consideration with reference to the particular subject concerning which the words are used. In *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042, we held that when the interpretation of a statute according to the exact and literal import of its words will defeat the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason, disregarding, as far as may be necessary, the strict letter of the law. In *Kelly v. Lassen Hotel Co.,* 161 Kan. 444, 168 P. 2d 527, we decided that the provisions of a statute should be construed together and in their entirety in determining the purpose of the legislature in its enactment."

There is one basic principle about our sales tax act. It is that the ultimate consumer should pay the tax and no article should have to carry more than one sales tax. The intention was that in the various steps between a loaf of bread and the wheat field the person who bought the wheat from the farmer should not pay a sales tax nor the mill that bought it from the elevator man nor the jobber who bought the flour from the mill nor the baker who bought the flour from the jobber. To prevent such a result as nearly as possible, G. S. 1947 Supp. 79-3602 (*k*) was enacted. It had to be so. It should be noted that for each step from the wheat field to the bakery the title to the wheat and flour passed. It was bought each time with the idea of the title passing and there being a resale. This is not true of the property in question here. When the telephone company buys a pole and sets it in the ground the pole belongs to it and the title does not pass to anyone of the telephone company's service. When the baker buys a new oven or the shoemaker a new machine or the shirtmaker a new sewing machine, he pays a sales tax on these purchases because they are the ultimate consumers, the title has come to rest, no further transfer of title is contemplated.

In *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* supra, we considered whether the use, storage and consumption of certain property, such as casings, flanges and couplings and other similar items bought outside the state and stored, used and consumed by the pipeline company in this state were taxable. The items were about such as we are considering here. After we dealt with the interstate commerce feature, we pointed out that the outcome of the case turned on the meaning to be given the word "consumption" as used in G. S. 1947 Supp. 79-3704 (*a*), the "exemption" section. We then said:

"When the involved statute in its entirety is tested by the foregoing legal principles we are convinced the intent of the legislature in using the word 'consumption' as found in G. S. 1945 Supp. 79-3704 (*a*) was to limit the exemption from payment of the compensating tax to such articles of tangible personal property as were brought into the state by a public utility for use in such manner as to accomplish their direct and immediate consumption in interstate commerce."

The result was that the use and consumption of the property in question was held not to be exempt from the tax.

The rule is stated in 47 Am. Jur. 225, as follows:

"Thus, under a sales tax statute providing that sales of tangible personalty to persons engaged in the business of manufacturing or compounding for sale, profit, or use any article, substance, or commodity, which personalty enters into the processing of, or becomes an ingredient or component part of, the product manufactured, compounded, or furnished, shall be deemed to be wholesale sales and exempt from taxation under the act, it has been held that the phrase 'enters into the processing of' requires that such personalty become a constituent part of the final product in a series of continuous operations and treatments, wholly or partially, either by chemical or by mechanical means."

*Bedford v. Colorado Fuel and Iron Corp.,* 102 Colo. 538, 81 P. 2d 752, is a case where a company engaged in the manufacture of steel and steel products claimed that its use of certain property, such as hay fed to the mules, refractories used in the furnaces, tools, office supplies, equipment, trucks, chemicals, workmen's equipment and many other items were exempt from paying the tax under a statute such as we are considering. The court did not agree and said:

"Applying these definitions to the words under consideration it would seem certain they mean that to enter into the processing of an article, substance or commodity, tangible personal property must of necessity become a constituent part of such final product in the series of continuous operations and treatment leading to this result."

A situation somewhat analogous was dealt with in *Warren v. Fink*, 146 Kan. 716, 72 P. 2d 968. There Warren, a retail groceryman, maintained that he should not have to pay the tax on the electrical energy he bought to operate his refrigeration system wherein he stored meat, vegetables and other perishable products. He claimed to be exempt under the provisions of the statute we are now considering on the ground he was a processor. We said:

"The argument is that plaintiff is a processor within the meaning of the act. We think the point is not well taken. What is done is to preserve these commodities in substantially the same condition. It is quite different from the use of refrigeration to make ice cream from milk and other ingredients, or from making a new or different article by heat. The electric energy purchased by plaintiff is not resold, but is consumed by him in the conduct of his business, just as he might consume electric energy for lights in his store.

"In the interpretation of this statute the rule common to tax statutes, that one who claims exemption from the tax must bring himself clearly within the exempted provisions, is applicable. It seems clear that plaintiff is unable to do this."

See, also, *People v. Monterey Ice & Dev. Co.*, 29 Cal. App. 2d 421. There it was held that the tax should be paid on ice that was crushed and used in icing lettuce in carload lots. See, also, *National Ice, Etc., Co. v. Pacific F. Exp. Co.*, 11 Cal. 2d 283, 79 P. 2d 380. In *Warren v. Fink*, supra, we held that the sale of string, butter, trays and related items to a retail grocer was taxable. See, also, *Wiseman v. Ark. Wholesale Grocers' Ass'n*, 192 Ark. 313, 90 S. W. 2d 987; also *J. R. Raible Co. v. State Tax Commission*, 239 Ala. 41, 194 So. 560. In practically all the cases the test was whether the sale in question is for resale or to be finally consumed by the buyer. Here it seems clear that the property in question is finally used by the plaintiff.

The judgment of the trial court is affirmed.