(277 P.3d 1157)

No. 105,139

In the Matter of the Appeal of CESSNA EMPLOYEES CREDIT UNION from an Order of the Division of Taxation.

Opinion filed April 6, 2012.

*Gerald N. Capps*, of Wichita, for appellant.

*Alice Leslie Rawlings*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GREENE, C.J., LEBEN and STANDRIDGE, JJ.

GREENE, C.J.: Cessna Employees Credit Union (CECU) appeals a summary judgment entered against it by the Kansas Court of Tax Appeals (COTA) on its refund claim for sales taxes paid on the travel reimbursement component of goods and services rendered by Jack Henry and Associates (JHA) in providing computer upgrade goods and services to CECU. COTA concluded that travel expenses billed by JHA to CECU were "part of the total amount of consideration given by CECU in the transaction for which the taxable goods and goods and services were sold" and thus subject to Kansas retailers sales tax as part of the "gross receipts" of JHA in the transaction. Concluding there was no "sale" of the reimbursed travel expenses, we reverse and remand with directions to grant CECU's refund claim.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the material facts, which were set forth by COTA as follows:

"In 2006, Jack Henry and Associates ('JHA') sold taxable goods and services to Cessna Employees Credit Union ('CECU'). JHA invoiced CECU for the services, hardware and software. JHA separately invoiced CECU for the Travel Purchases (JHA employees' transportation, meals, and lodging).

"CECU is seeking a refund of Kansas sales tax in the amount of $3,333.05 it paid to JHA on the costs of the Travel Purchases. JHA Travel Purchases were necessary to complete JHA's taxable contractual obligations to CECU.

"CECU reimbursed JHA for the cost of its Travel Purchases including the in and out of state taxes JHA paid on the Travel Purchases. The cost of each of JHA's Travel Purchases (and supporting documentation) was separately stated on the invoices JHA submitted to CECU for payment. Department Exhibits Nos. 9.1 through 9.106 are documents relating to JHA's Travel Purchases and Reimbursements from CECU. The documents were provided to the Department by CECU.

"JHA was the ultimate consumer of the Travel Purchases JHA separately invoiced to CECU. CECU was not the ultimate consumer of the goods and services included in the cost of the separately invoiced Travel Purchases.

"On June 30, 2008, CECU filed its request for a refund of the $3,333.05 retailers' sale tax it paid to JHA on JHA's Travel Purchase costs. On October 31, 2008, the Department denied the CECU refund claim stating that the Travel Purchases and applicable retailers' sales tax paid by JHA are included in the taxable measure of the gross selling price of the goods and services JHA sold to the CECU.

"On November 11, 2008, CECU appealed the Department's denial of the refund claim to the Secretary claiming the decisions in *In re [Tax Appeal of] Bernie's Excavating Co, Inc.*, 13 Kan. App. 2d 476, 772 P.2d 822 [, *rev. denied* 245 Kan. 784] (1989) and *Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation, et al.*, 168 Kan. 227, 212 P.2d 363 (1950) exclude the Travel Purchases from the taxable measure of the gross selling price. CECU claims that the reimbursed Travel Purchases are non-taxable to the CECU because the JHA paid the tax on the purchases, the Travel Purchase are not for the sales of taxable tangible personal property or statutorily enumerated services, some of the Travel Purchases were incurred outside the state of Kansas, and taxation on the Travel Purchases is barred by the federal and Kansas state constitutions.

"On July 17, 2009, the Secretary upheld the Department's denial of the refund claim. On August 17, 2009, CECU timely appealed the Secretary's denial to the Court of Tax Appeals."

In order to clarify precisely what is at issue, the record on appeal reflects that each of the transactions in question consisted of the individual travel expenses of a JHA employee, together with the sales tax on those expenses as paid by JHA to the vendor, but then separately invoiced to CECU for reimbursement with sales taxes computed again on the total. The amount invoiced was the original travel expenses plus sales tax paid, but with sales tax then computed on that total and billed for reimbursement to CECU. For example, an employee's hotel expense of $527.43 already included sales taxes of $35.92, but that total expense was then again subjected to Kansas retailers' sales tax before being billed to CECU for reimbursement.

COTA denied CECU's refund claim, reasoning in material part:

"The retailers' sales tax act imposes a sales tax upon the gross receipts from sales of goods and services taxable under the act. K.S.A. 2009 Supp. 79-3603. The tax is paid by the consumer and collected by the retailer (seller). K.S.A. 2009 Supp. 79-3604. 'Gross receipts' is defined by the statute as the total selling price. K.S.A. 2009 Supp. 79-3602(o). Sales or selling price means the total amount of

consideration, including cash, credit, property and services, for which personal property or services are sold valued in money, whether received in money or otherwise, *without any deduction for the cost of materials used, labor or service cost, interest, losses, all costs of transportation to the seller, all taxes imposed on the seller, and any other expense of the seller.* K.S.A. 2009 Supp. 79-3602(ll)(1)(B). Enumerated in the act are specific exclusions from the definition of 'selling price': (*See* K.S.A. 2009 Supp. 79-3602(ll)(3)), as well as various sales tax exemptions. No statutory provision specifically excludes or exempts the expenses at issue in this case. Thus, under the maxim *expressio unius est esclusio alterius*, we must conclude that it was the intent of the legislature not to exclude or exempt these expenses. *See In re Application of Lietz Construction Co.*, 273 Kan. 890, 911, 47 P.3d 1275, 1290 (2002).

"We agree that the ultimate consumer of the travel was JHA and JHA paid sales tax on the travel services. In the present case, however, the travel services are not being resold to CECU. A flaw in CECU's theory is that CECU is not being taxed on travel services as the consumer of the travel. The sales tax at issue here has been levied upon the total amount of consideration given by CECU in the transaction with JHA for providing the upgrades. In this sale transaction between JHA and CECU, we find that the travel is properly considered an expense incurred by the seller. Instead of contracting for a definite total selling price, the parties made the selling price, or total amount of consideration given by the purchaser, dependent in part on the expenses of the seller by requiring the reimbursement of the expenses.

"Upon review of the uncontroverted facts presented, we find that the reimbursement of the seller's travel expenses was part of the total amount of consideration given by CECU in the transaction for which the taxable goods and services were sold by JHA. Although the expense reimbursement was separately itemized on the invoices, the selling price must include 'the total cost to the consumer without any deduction or exclusion for the cost of the property or service sold, labor or service used or expended, materials used, losses, overhead or any other costs or expenses, or profit, regardless of how any contract, invoice or other evidence of the transaction is stated or computed, and whether separately billed or segregated on the same bill.' K.A.R. 92-19-46. *See also* K.S.A. 2009 Supp. 79-3602(ll)(1). In the light of the inclusive character of the statute and regulation, the expense reimbursement was properly included in the gross receipts for purposes of the retailers's sales tax. The reimbursement clearly falls within the taxing statutes. The language of the statute is not ambiguous and squarely includes the expense reimbursement in gross receipts."

After COTA denied CECU's motion for reconsideration, CECU timely perfected its petition for judicial review to this court.

## Standards of Review

COTA orders are subject to appellate review under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* Because the facts are not in dispute, the scope of review here is limited to whether COTA erroneously interpreted or applied applicable statutes. K.S.A. 2010 Supp. 77-621(c)(4). "This court's review of statutory interpretation in tax appeal matters is unlimited, and an appellate court applies the same general rules that are applied in other contexts." *In re Tax Appeals of Genesis Health Clubs,* 42 Kan. App. 2d 239, 242, 210 P.3d 663 (2009), *rev. denied* 290 Kan. 1094 (2010).

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills,* 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). Kansas appellate courts no longer give deference to an agency's interpretation of a statute and, therefore, have unlimited review. *Saylor v. Westar Energy, Inc.,* 292 Kan. 610, 614, 256 P.3d 828 (2011); *In re Tax Exemption Application of Kouri Place,* 44 Kan. App. 2d 467, 471, 239 P.3d 96 (2010).

In this case, the parties disagree as to whether the tax statutes in this case are to be construed in favor of or against CECU. The taxpayer argues that the issue presented in this appeal is the imposition of Kansas retailers' sales tax, not an exemption, and therefore the statutes should be construed in the taxpayer's favor, citing *In re Tax Appeal of Harbour Brothers Constr. Co.,* 256 Kan. 216, 223, 883 P.2d 1194 (1994). The Kansas Department of Revenue (the Division of Taxation or Division) argues that CECU seeks a refund, citing our Supreme Court, which has stated that "[i]n construing tax statutes, refund provisions are construed strictly against the entity seeking a refund. The burden of proof is on the person asserting a claim for refund to bring himself or herself within the refund statute." *In re Tax Appeal of Ford Motor Credit Co.,* 275 Kan. 857, 861, 69 P.3d 612 (2003).

Here, however, while CECU seeks a refund, it does not do so under a statutorily enumerated refund provision. See *Ford Motor Credit,* 275 Kan. at 862-63. Rather, CECU's claim is that JHA's

travel expenses are not taxable to it as part of JHA's gross receipts. Therefore, this court is "interpreting a statute imposing a tax," not one of exemption or refund, and must follow the rules of strict construction. See *In re Tax Appeal of Atchison Cablevision*, 262 Kan. 223, 227-28, 936 P.2d 721 (1997). "This rule is, of course, subservient to the fundamental rule of statutory construction which requires that the purpose and intent of the legislature govern." *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 246, 891 P.2d 422 (1995).

When courts are called upon to interpret statutes, we begin with the fundamental rule that we must give effect to the intent that the legislature expressed through the plain language of the statutes, when that language is plain and unambiguous. See *State v. Valladarez*, 288 Kan. 671, 675-76, 206 P.3d 879 (2009). An appellate court's first task is to ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). Only if the statutory language is not plain and unambiguous are the courts called upon to resort to canons of statutory construction or consult legislative history. See *Valladarez*, 288 Kan. at 675-76; *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009).

## DID COTA ERR IN GRANTING SUMMARY JUDGMENT AGAINST CECU ON ITS REFUND CLAIM?

At first blush, COTA's approach to the issue framed is quite seductive. If we turn to the statutory framework to determine whether JHA's travel expenses when reimbursed were a part of gross receipts from CECU, it appears they are part of a taxable transaction. After all, the phrase "gross receipts" is defined as "the total selling price" (K.S.A. 2010 Supp. 79-3602[o]), and "total selling price" is defined as "total amount of consideration . . . without any deduction for . . . all taxes imposed on the seller." K.S.A. 2010 Supp. 79-3602(ll)(1)(B).

Thus, the Division of Taxation suggests that taxes paid by a retail seller are not and cannot be deducted when there has been a sale at retail. The Division urges our consideration of this hypothetical:

If a retailer of clothes has paid sales tax when purchasing the racks for display of its clothes, that tax paid certainly is not subject to deduction before application of Kansas sales tax when the clothes are sold at retail. But that is not what we have here. Although JHA sold computer upgrade goods and services to CECU, the travel expenses were not "sold" but rather *reimbursed* by CECU. The tax imposition provisions in question are K.S.A. 2010 Supp. 79-3603(a) and (q), which provide, respectively, that there is levied and to be paid retail sales tax on:

"(a) The gross receipts received from the sale of tangible personal property at retail within this state;

. . . .

"(q) the gross receipts received for the service of repairing, servicing, altering or maintaining tangible personal property which when such services are rendered is not being held for sale in the regular course of business, and whether or not any tangible personal property is transferred in connection therewith."

So, again we examine the "gross receipts" definition and find that " 'gross receipts' means the total selling price or the amount received as defined in this act, in money, credits, property or other consideration valued in money *from the sales at retail* within this state." (Emphasis added.) K.S.A. 2010 Supp. 79-3602(o). And total "selling price" means "the total amount of consideration, including cash, credit, property and services, *for which personal property or services are sold.*" (Emphasis added.) K.S.A. 2010 Supp. 79-3602(ll)(1).

Thus, the real question before us is whether the reimbursement of travel expenses of JHA was part of the consideration "from [JHA's] sale at retail" of computer upgrade goods and services or part of the consideration "for which [such] property or services [were] sold." We conclude they were not because they were not in any way sold at retail, nor were they a part of the sale of goods and services, nor were they part of the selling price of the goods and services. They were, in fact, merely a reimbursement of an associated cost incurred by the seller. The Division stipulated that these costs were "reimbursed" rather than sold, were invoiced separately, and were consumed by JHA, *not* by CECU.

Fundamental to Kansas sales taxation is the principle that sales tax is to be paid by the ultimate consumer or user. See K.S.A. 2010 Supp. 79-3604. Our appellate courts have consistently held that no article of taxable goods or services should have to carry more than one sales tax.

"The basic principle [is] that a sales or use tax is to be paid only once on any particular item and that payment is to be made by the ultimate consumer. . . .

" 'There is one basic principle about our sales tax act. It is that the ultimate consumer should pay the tax and no article should have to carry more than one sales tax. . . . When the baker buys a new oven or the shoemaker a new machine or the shirtmaker a new sewing machine, he pays a sales tax on these purchases because they are the ultimate consumers, the title has come to rest, no further transfer of title is contemplated.' " *In re Appeal of K-Mart Corp.*, 238 Kan. 393, 397, 710 P.2d 1304 (1985) (quoting *Southwestern Bell Telephone Co. v. State Comm'n of Revenue*, 168 Kan. 227, 233, 212 P.2d 363 [1949]).

See also *Consumers Co-operative Ass'n v. State Comm. of Rev. & Taxation*, 174 Kan. 461, 256 P.2d 850 (1953) (ultimate consumer should pay the tax and no article should carry more than one sales tax); *R.L. Polk & Co. v. Arnold*, 215 Kan. 653, 657, 527 P.2d 973 (1974); *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, 385, 838 P.2d 354 (1992), *rev. denied* 252 Kan. 1092 (1993); *Kansas Power & Light Co. v. Aarens*, 16 Kan. App. 2d 620, 622, 827 P.2d 74 (1992).

And just as the baker, shoemaker, and shirtmaker do not seek reimbursement of these costs and cannot directly collect from the purchasers of bread, shoes, or shirts such sales taxes paid, JHA cannot be expected to collect sales tax from CECU when its travel expenses are invoiced for reimbursement. If JHA had chosen to increase the price of its goods and services so as to recover these costs rather than seek mere reimbursement, this would be a different transaction for sales tax purposes. As we perceive the apparent contract between JHA and CECU, the transaction was constructed to be a sale of goods and services and a reimbursement of necessary travel expenses.

The Division argues that its regulations make the transaction construction a distinction without a difference, citing K.A.R. 92-19-46(a), which includes as a part of the definition of selling price:

"(2) the total cost to the consumer without any deduction or exclusion for the cost of the property or service sold, labor or service . . . expended, materials used, losses, overhead or any other costs or expenses, or profit, regardless of how any contract, invoice or other evidence of the transaction is stated or computed, and whether separately billed or segregated on the same bill."

We are unimpressed by this argument, however, for several reasons. First, we note that the statute expressly excludes from taxation "any taxes legally imposed directly on the consumer that are separately stated on the invoice . . . given to the purchaser." K.S.A. 2010 Supp. 79-3602(ll)(3)(C). Second, the mere definition of selling price within the Department's regulation cannot change the fact that the imposition statute makes taxable only the gross receipts for the service rendered, not for reimbursed travel expenses where the seller is the ultimate consumer of the travel. And, finally, the statutory definition of "selling price" means the consideration "for which the . . . services are sold," K.S.A. 2010 Supp. 79-3602(ll)(1), and cannot fairly be interpreted to include travel costs subject only to reimbursement but not sold. To the extent the regulation attempts to expand imposition authority beyond statutory authority, it has no operative effect. See *Wagner v. State*, 46 Kan. App. 2d 858, Syl. ¶ 4, 265 P.3d 577 (2011), *rev. denied* 294 Kan. 948 (2012).

Although authority from other jurisdictions in this context has limited value, we note that other jurisdictions have applied similar reasoning to reach similar conclusions. See, *e.g.*, *Dining Management Services, Inc. v. Commissioner of Revenue*, 404 Mass. 335, 534 N.E.2d 1178 (1989) (expense reimbursement of meals to clients' employees were not retail sales of meals); *M & M/Mars, Inc. v. Com.*, 162 Pa. Commw. 375, 639 A.2d 848 (1994) (fee paid for operation of cafeteria for use by employees does not involve transfer of ownership of tangible personality.

The Division expressed its concern at oral argument that if we embrace CECU's position here, there would be untold impact beyond this case potentially affecting all transactions subject to Kansas retailers' sales tax. We respectfully disagree. Our opinion is limited to those circumstances where a goods or services contract makes provision for reimbursement of travel expenses consumed

by, taxable to, and taxes paid by the seller, with those expenses separately invoiced to the party reimbursing same. We do not perceive this transaction construction to be employed or employable in the majority of sales transactions subject to sales taxation in Kansas. Moreover, to the extent our conclusion may be applicable to other transactions, the Division's argument is irrelevant here and more aptly made to the legislature. We have simply construed and applied the applicable statutory provisions.

In summary, we have found no ambiguity in the statutory language as it applies to this case. Quite simply, there were no retail sales involving the travel expenses, so no retail sales tax may be applied to them—those taxes already having been fully paid by the end consumer of those expenses as stipulated by the parties. But even if the statutes were ambiguous and somehow capable of being construed as argued by the Division, the rule of strict construction of tax imposition statutes must favor the taxpayer. See *Harbour Brothers Constr. Co.*, 256 Kan. at 223. Based upon the lack of unequivocal imposition authority for retail sales tax to be collectable on travel expenses and associated sales tax already paid by the vendor and separately invoiced to a purchaser of taxable goods and services for mere reimbursement, any sales tax paid is subject to refund. Accordingly, we must reverse the Court of Tax Appeals and remand with directions to grant the refund application of Cessna Employees Credit Union.

Reversed and remanded with directions.